IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| JOHN W. PIEPER, JR., | ) | |
| | ) | |
| Petitioner, | ) | 4:09CV3260 |
| | ) | |
| v. | ) | |
| | ) | |
| ROBERT HOUSTON, Director, | ) | MEMORANDUM AND ORDER |
| Nebraska Department of Corrections, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

John W. Pieper, Jr. (Pieper) filed a habeas corpus Petition (filing 1) claiming that his conviction and sentence, enhanced by a finding that he was a habitual criminal, should be overturned. Respondent answered (filing 9) and submitted the state court records. (Filings 8 and 16.) The case has been fully briefed. (Filings 10, 26, and 28.) I now deny and dismiss the Petition with prejudice for the reasons set forth below.

### *I. BACKGROUND*

Pieper asserted seven claims, but only four survived initial review. Those claims are:

> Claim One: Petitioner was denied due process of law *because* the prosecution did not inform the defense, prior to trial, that a witness was planning to contradict prior testimony.
>
> Claim Two: Petitioner was deprived the effective assistance of counsel in violation of the Sixth and Fourteenth Amendments *because*

|  |  |
|---|---|
|  | Petitioner's trial attorney (1) did not move for a continuance after learning that a witness was planning to contradict prior testimony; (2) did not properly advise Petitioner regarding a plea offer; (3) did not object to the prosecution's use of hearsay evidence; (4) did not object to the admission of irrelevant and prejudicial evidence; (5) did not object to the crime-scene technician's speculative testimony; (6) did not call an expert witness to refute the prosecution's evidence; (7) did not present a temporary insanity defense; (8) did not object when Petitioner was cross-examined regarding the credibility of other witnesses; (9) did not object to use of the term "defendant"; (10) did not object to references to Petitioner's criminal history; (11) did not offer a witness's deposition as substantive evidence at trial; (12) did not present evidence that another individual had claimed responsibility for the assault of the victim; (13) did not show discovery photographs to Petitioner prior to trial; (14) failed to suppress a knife and metal towel rod; (15) did not object to Petitioner's pre-trial statements; (16) did not provide Petitioner with certain police reports prior to trial; and (17) made prejudicial allegations before and during trial. |
| Claim Three: | Petitioner was deprived the effective assistance of counsel in violation of the Sixth and Fourteenth Amendments *because* Petitioner's appellate counsel (1) failed to argue that Petitioner's trial counsel was ineffective; (2) failed to argue that the prosecution committed misconduct; and (3) |

                    failed to argue that Petitioner should not have been sentenced as a habitual criminal.

* * *

Claim Five:      Nebraska's habitual criminal statute is unconstitutional as applied to Petitioner's conviction.

* * * *

(Filing 6.)

The Nebraska Supreme Court has fairly described the procedural history of the underlying criminal prosecution, the trial, and the assignment of error submitted on direct appeal by Pieper's appellate counsel. Parenthetically, appellate counsel was different than trial counsel. Since the Nebraska's Supreme Court's summary is thorough and accurate, and since that summary is pertinent to Respondent's arguments, I repeat it here:

### NATURE OF CASE

John Pieper was convicted in the district court for Lancaster County of first degree assault and false imprisonment in the first degree. Pieper appeals his convictions and his sentencing as a habitual criminal. We affirm.

### STATEMENT OF FACTS

The State charged Pieper with first degree assault, first degree sexual assault, and false imprisonment in the first degree. The State amended the information to charge Pieper as a habitual criminal. The charges arose out of incidents that occurred on July 11 and 12, 2004, and involved Pieper; a codefendant, Jeremiah Croghan; and the victims, Vernon French and A.N. Pieper, Croghan, French, and A.N. testified at trial and gave accounts of the incidents which varied in certain respects.

There is no claim that the evidence is insufficient, and taking the evidence favorably to the State, we summarize the evidence as follows.

In July 2004, French was living with his girlfriend, A.N. They were in their apartment on the night of July 11, listening to music. Late that night, Croghan and Pieper came to the door of the apartment and told French and A.N. that they had heard the music and wanted to introduce themselves. Croghan had recently moved into an apartment down the hall.

Accounts vary regarding which persons drank whiskey or beer, took Xanax, or smoked marijuana that night. At some point in the evening, arguments ensued and French was beaten. French was hospitalized for 5 to 7 days with injuries from the assault. Pieper was convicted of the assault in this case. There was testimony that at one point, Pieper held a knife to A.N.'s throat and took her to Croghan's apartment. Pieper was convicted of false imprisonment with respect to A.N. There was also testimony that A.N. was sexually assaulted. Pieper was found not guilty of this charge.

A tape recording of an interview French gave to a police officer was entered into evidence during the officer's testimony, but no portion of the tape recording was played to the jury. A transcription of the tape recording of another police officer's interview with French was also entered into evidence during that police officer's testimony, but no part of the transcription was read to the jury. Pieper's counsel did not object to admission of the tape or the transcription.

A tape recording of an interview A.N. gave to a police officer was marked as an exhibit, but there is no indication in the record that the tape was offered or admitted into evidence. No portion of the tape recording was played to the jury.

Croghan testified at Pieper's trial in a manner which was generally unfavorable to Pieper. Included in that testimony was a description of Pieper's hitting French and threatening French with a knife. In his initial statements to police on July 14, 2004, Croghan's recounting of events

-4-

was generally similar to his trial testimony. In contrast to the trial testimony, on May 2, 2005, Croghan gave a deposition which was more favorable to Pieper and painted a picture in which French had been an aggressor and Croghan had kicked French. Weeks before Pieper's trial, on February 22, 2006, the prosecutor in this case asked a police officer to contact Croghan to ask how he would testify at trial. Prior to the conversation, the officer thought that Croghan "was going to claim all responsibility of wrong doing [sic] in this case." However, Croghan told the officer that he had lied in his deposition because he was being threatened by Pieper's associates. Croghan told the officer that at trial, he planned to tell the truth, which more closely tracked his original statement to police in which Croghan stated that Pieper had assaulted French. The officer called the prosecutor on February 22 to orally report on the conversation, but the officer did not prepare a written report of the conversation until April 11, after Pieper's trial had begun. On April 12, the third day of Pieper's trial, and prior to Croghan's testimony, Pieper moved to dismiss based on prosecutorial misconduct because he had not been provided a copy of the officer's report of the February 22 conversation with Croghan until that day. The court overruled the motion to dismiss. Pieper then made a motion for mistrial, which the court also overruled.

Pieper testified in his own defense. In his testimony, Pieper stated that French had been an aggressor and that it was Croghan who had hit French. Pieper denied that he ever punched, kicked, or stomped on French.

The jury returned a verdict on April 18, 2006, finding Pieper guilty of first degree assault and false imprisonment but not guilty of sexual assault. On April 21, Pieper filed a motion for new trial based on general allegations of irregularities and misconduct. On May 3, Pieper filed a pro se amended motion for new trial in which he made more specific allegations, including allegations of prosecutorial misconduct and ineffective assistance of counsel. Pieper also filed a pro se motion to dismiss counsel and appoint new counsel. The court sustained Pieper's motion for new counsel and appointed new counsel on May 12. On May 25, Pieper filed a third amended motion for new trial, asserting

irregularities, misconduct, and ineffective assistance of counsel. Hearings were held, and on November 27, the court overruled the motion for new trial.

An enhancement hearing based on the habitual criminal allegation was held December 12, 2006. At the enhancement hearing, Pieper objected on the basis that "notwithstanding Nebraska Supreme Court precedent," enhancement pursuant to the habitual criminal statute, Neb.Rev.Stat. § 29-2221 (Cum.Supp.2006), violated the Double Jeopardy Clauses of the Nebraska and federal Constitutions. The court overruled the objection and found Pieper to be a habitual criminal. The court sentenced Pieper to imprisonment for 10 to 20 years on each of the two convictions, with the sentences to be served consecutive to one another.

Pieper appeals.

ASSIGNMENTS OF ERROR

Pieper asserts that the district court erred in (1) failing to grant his motion for new trial on the basis that the State failed to timely disclose to the defense Croghan's statement on February 22, 2006, that his testimony at trial would be consistent with his original statement to the police and contrary to his deposition, (2) admitting tape recordings and transcriptions of the victims' statements into evidence without playing the tapes during trial and without restricting jury access to the tapes and transcriptions during deliberations, (3) failing to grant his motion for new trial on the basis that he received ineffective assistance of trial counsel, (4) failing to conclude that the habitual criminal statute violates the Double Jeopardy Clause, and (5) imposing excessive sentences.

*State v. Pieper*, 743 N.W.2d 360, 363-365 (Neb. 2008).

After Pieper's direct appeal was denied, he commenced a state post-conviction action raising a variety of claims, including ineffective assistance of counsel, but his claims were denied by the state district judge. (*See* filings 8-6 through 8-8.) When Pieper filed his "Affidavit in Support of Motion to Proceed in a [sic] Forma Pauperis"

so that he could submit his post-conviction action without payment of fees, his affidavit was properly notarized. (Filing 8-7 at CM/ECF pp. 32-33.)

After the denial of his post-conviction action, Pieper appealed. Pieper submitted an "Affidavit in Support of Motion to Proceed in Forma Pauperis" so that he could appeal without payment of fees, but that document, unlike his earlier affidavit, was not notarized. (Filing 8-6 at CM/ECF pp. 33-34.) The state district judge granted Pieper leave to proceed in forma pauperis on appeal. (Filing 8-7 at CM/ECF p. 78.) However, the Nebraska Court of Appeals dismissed the appeal on jurisdictional grounds. (Filing 8-8 at CM/ECF pp. 1-2). The Court wrote:

> Appeal dismissed. See Neb. Ct. R. App. P. § 2-107(A)(2).[1] Appellant's poverty affidavit, filed in lieu of the statutory docket fee was not notarized. See State v. Haase, 247 Neb. 817, 530 N.W.2nd 617 (1995)[2] (inadequate poverty affidavit does not waive mandatory docket fee or vest jurisdiction in appellate court).

(Filing 8-8 at CM/ECF pp. 1-2.)

Pieper submitted a petition for further review to the Nebraska Supreme Court, but the Court decided not to review the Court of Appeal's decision and, accordingly,

---

[1]The Rule cited by the Court of Appeals states: "When the court determines it lacks jurisdiction the appeal will be dismissed in the following manner: 'APPEAL DISMISSED. See Neb. Ct. R. App. P. § 2-107(A)(2).'" *Id.*

[2]In *Haase*, the Nebraska Supreme Court held that an affidavit of poverty filed in a criminal proceeding was ineffective and void where it was signed and sworn to before a notary commissioned only in another state. The Court stated that the filing of a proper affidavit was jurisdictional, and the Nebraska appellate courts acquired no jurisdiction without the payment of the required fees or a properly notarized affidavit. *Haase*, 530 N.W.2d at 619.

the Nebraska Supreme Court denied Pieper's petition. (Filing 8-8 at CM/ECF p. 2.) Pieper then brought the pending action.

## *II. ANALYSIS*

For two reasons, Pieper's habeas petition must be denied and dismissed with prejudice. First, for the claims that have been arguably presented to the Nebraska Supreme Court (claims 1 and 5), the resolution of those claims is entitled to deferential review, and when that deferential review is applied, there is no basis for overturning the Nebraska Supreme Court's decision. Second, for the claims that have not been presented to the Nebraska Supreme Court (claims 2 and 3), they have been exhausted but they are procedurally defaulted, and there is no basis for excusing the procedural default.

*Deferential Review of Claims One and Five*

When a state court has adjudicated a habeas petitioner's claim on the merits, there is a very limited and extremely deferential standard of review both as to the facts and the law. *See* 28 U.S.C. § 2254(d). With regard to the deference owed to factual findings of a state court's decision, a federal court is bound by those findings unless the state court made a "decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Additionally, a federal court must presume that a factual determination made by the state court is correct, unless the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

Further, section 2254(d)(1) states that a federal court may not grant a writ of habeas corpus unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). As explained by the Supreme Court in *Williams v. Taylor*, 529 U.S. 362 (2000), a state court acts contrary to clearly established federal law if it applies a legal rule that contradicts the Supreme Court's prior holdings or if it reaches a different result from one of that Court's cases despite confronting indistinguishable facts. *Id.* at 399. Importantly, "it is not enough for [the court] to conclude that, in [its] independent judgment, [it] would have applied federal law differently from the state court; the state court's application must have been objectively unreasonable." *Rousan v. Roper*, 436 F.3d 951, 956 (8th Cir. 2006). This high degree of deference only applies where a claim has been adjudicated on the merits by the state court. See *Brown v. Luebbers*, 371 F.3d 458, 460-61 (8th Cir. 2004) ("[A]s the language of the statute makes clear, there is a condition precedent that must be satisfied before we can apply the deferential AEDPA standard to [the petitioner's] claim. The claim must have been 'adjudicated on the merits' in state court.").

Regarding claim one—that the prosecutor failed to timely disclose the plan of a witness (Croghan) to contradict prior (deposition) testimony—the Nebraska Supreme Court concluded under *Brady v. Maryland,* 373 U.S. 83 (1963) that (1) the testimony (an oral statement made to a police officer) was inculpatory and not exculpatory and thus there was no constitutional obligation to make a disclosure and (2) in any event, the prosecutor disclosed the statement in a timely fashion prior to the witness's testimony. *Pieper, 743 N.W.2d at 365-367*. There is no basis for overturning the Nebraska Supreme Court's reasoned decision.

Regarding claim 5–that the Nebraska Habitual Criminal statute violates the Constitution–the Nebraska Supreme Court reasoned that the Double Jeopardy Clause of the Constitution does not apply because an enhanced sentence based upon a prior crime is not new jeopardy or additional punishment for the earlier crime, but simply a stiffened penalty for a subsequent crime. *Id.* at 369. Pieper has provided no good reason to think that the Nebraska Supreme Court's decision violates established

-9-

federal law, and I can find none. *See*, *e.g.*, *McDonald v. Commonwealth of Massachusetts*, 180 U.S. 311, 312 (1901) ("The fundamental mistake of the plaintiff in error is his assumption that the judgment below imposes an additional punishment on crimes for which he had already been convicted and punished in Massachusetts and in New Hampshire. . . . But it does no such thing. The statute under which it was rendered is aimed at habitual criminals; and simply imposes a heavy penalty upon conviction of a felony committed in Massachusetts since its passage, by one who had been twice convicted and imprisoned for crime for not less than three years, in this, or in another state, or once in each. The punishment is for the new crime only, but is the heavier if he is an habitual criminal.")

*Procedural Default of Claims Two and Three*

As set forth in 28 U.S.C. § 2254(b)(1):

(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–

    (A) the applicant has exhausted the remedies available in the courts of the State; or

    (B) (I) there is an absence of available State corrective process; or
        (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1)

The United States Supreme Court has explained the habeas exhaustion requirement as follows:

-10-

> Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts . . . state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.

*O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). A state prisoner must therefore "fairly present" the substance of each federal constitutional claim to the state courts *before* seeking federal habeas relief. *Id.* at 844. In Nebraska, "one complete round" ordinarily means that each § 2254 claim must have been presented in an appeal to the Nebraska Court of Appeals, and then in a petition for further review to the Nebraska Supreme Court if the Court of Appeals rules against the petitioner. *See Akins v. Kenney*, 410 F.3d 451, 454-55 (8th Cir. 2005).

In addition, "fair presentation" of a habeas claim in state court means that a petitioner "must have referred to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue in a claim before the state courts." *Carney v. Fabian*, 487 F.3d 1094, 1096 (8th Cir. 2007) (quotation omitted). Thus, where a petitioner argued in the state courts only that "the trial court misapplied . . . state statutes and case law," the claim is procedurally defaulted. *Id.*; *see also Rucker v. Norris*, 563 F.3d 766, 771 (8th Cir. 2009) (finding claim was procedurally barred where the petitioner failed to raise his federal due process claim and "cited no federal authority" in the state courts).

Moreover, where "no state court remedy is available for the unexhausted claim—that is, if resort to the state courts would be futile—then the exhaustion requirement in § 2254(b) is satisfied, but the failure to exhaust 'provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can

demonstrate cause and prejudice for the default.'" *Armstrong v. Iowa*, 418 F.3d 924, 926 (8th Cir. 2005) (quoting *Gray v. Netherland*, 518 U.S. 152, 162 (1996)). Stated another way, if a claim has not been presented to the Nebraska appellate courts and is now barred from presentation, the claim is procedurally defaulted, not unexhausted. *Akins*, 410 F.3d at 456 n.1.

Under Nebraska law, "[a]n appellate court will not entertain a successive motion for postconviction relief unless the motion affirmatively shows on its face that the basis relied upon for relief was not available at the time the movant filed the prior motion." *State v. Ortiz*, 670 N.W.2d 788, 792 (Neb. 2003). Additionally, "[a] motion for postconviction relief cannot be used to secure review of issues which were or could have been litigated on direct appeal." *Hall v. State*, 646 N.W.2d 572, 579 (Neb. 2002). In such circumstances, where a Nebraska state court rejects a claim on state procedural grounds, and "issues a plain statement that it is rejecting petitioner's federal claim on state procedural grounds," a federal habeas court is precluded from "reaching the merits of the claim." *Shaddy v. Clarke*, 890 F.2d 1016, 1018 (8th Cir. 1989); *see also Greer v. Minn.*, 493 F.3d 952, 957 (8th Cir. 2007) (reiterating that "when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement," federal habeas is barred because "[i]n such instances, the state prisoner forfeits his right to present his federal claim through a federal habeas corpus petition") (quotations omitted). However, the state court procedural decision must "rest[] on independent and adequate state procedural grounds." *Barnett v. Roper*, 541 F.3d 804, 808 (8th Cir. 2008) (quotation omitted). "A state procedural rule is adequate only if it is a firmly established and regularly followed state practice." *Id.* (quotation omitted). Even where a claim has been procedurally defaulted, a petitioner is entitled to an opportunity to demonstrate cause and prejudice to excuse the default. *Akins*, 410 F.3d at 456 n.1.

Regarding claims two and three relating to ineffective assistance of trial and appellate counsel, those claims were never presented to the Nebraska Supreme Court

-12-

because Petitioner did not raise a "stand-alone" ineffective assistance of counsel claim on direct appeal and because Petitioner failed to perfect an appeal from the denial of the state post-conviction action. On direct appeal, Petitioner alleged ineffective assistance of trial counsel as a basis for his motion for new trial. He did not raise the ineffective assistance of counsel claim independently. The Nebraska Supreme Court ruled that a failure to grant a motion for new trial could not be used on appeal to raise ineffective assistance of counsel claims under Nebraska law and that Petitioner should have raised the ineffective assistance of counsel claims as "stand alone" claims unrelated to the motion for new trial on direct appeal or, separately, in a state post-conviction action. *Pieper*, 743 N.W.2d at 367-369. To the degree Pieper raised ineffective assistance of counsel claims in his state post-conviction action, he failed to present those claims to Nebraska's highest court because he failed to submit a jurisdictionally required notarized affidavit.

Because some of Petitioner's claims regarding ineffective assistance of trial counsel may have required an evidentiary hearing (e.g., Claim 2 part 2 asserting that trial counsel improperly advised Petitioner regarding a plea offer), I assume, without deciding, that Pieper was not barred from asserting his claims of ineffective assistance of trial counsel in the post-conviction action even though he had new counsel on direct appeal and even though new counsel failed to raise "stand alone" ineffective assistance of trial counsel claims on direct appeal. *See*, *e.g*, *State v. Bennett*, 591 N.W.2d 779, 782-783 (Neb. 1999) ("Although an appellate court will not address an ineffective assistance of counsel claim on direct appeal when the matter necessitates an evidentiary hearing, an appellate court's refusal to do so does not bar a later motion for postconviction relief.") Furthermore, even if Pieper could not have directly litigated ineffective assistance of trial counsel claims in the post-conviction action because he could have raised them on direct appeal, Pieper would still have had the opportunity to litigate the alleged ineffective assistance of appellate counsel claims in the post-conviction action and, in turn, that opportunity would have served as a gateway to the claims that trial counsel was ineffective.

Consequently, I again assume, without deciding, that the procedural default that may have occurred during the direct appeal may be excused. Even giving Petitioner the benefit of all these assumptions, he has failed to show a reason for excusing the procedural default that occurred during the post-conviction proceedings.

It would have been easy to file a properly notarized affidavit to proceed in forma pauperis on appeal. Indeed, Pieper submitted a properly notarized affidavit when he commenced the post-conviction action. (Filing 8-7 at CM/ECF pp. 32-33.) Despite the fact that Pieper claims he was in segregation and unable to access a notary, the record establishes that his excuse is unfounded. Through sworn affidavits and court records, it is clear (1) that notaries are available, generally on the same day, to inmates who are in segregation (filing 8-10 at CM/ECF p. 1; Filing 8-11 at CM/ECF pp. 1-2) and (2) understanding that the state district judge denied post-conviction relief on August 24, 2009 (filing 8-7 at CM/ECF pp. 56-57) and further understanding that Petitioner attempted to perfect his appeal in September of 2009 (filing 8-8 at CM/ECF p. 1), the record proves that Pieper made no effort to access a notary from July 2009 through January 29, 2010 (filing 8-11 at CM/ECF pp. 1-2 (Affidavit of Unit Manager)). He simply did not attempt to comply with the rule although he obviously knew of it.

There is reason to think that Pieper's unverified affidavit to appeal without payment of fees may have been fraudulent. For example, during the relevant time frame, the record establishes that other people were putting money into Pieper's prison account in amounts totaling $690.95 and that Pieper, rather than using the money to fund his litigation activities, used the money to buy art supplies and other personal items, thus driving his account balance down. (Filing 8-6 at CM/ECF pp. 18-24) (monthly institutional account records for six-month period of March 2009 through August 2009).) Thus, Pieper may well have had a sub rosa reason *not* to swear to his affidavit before a notary.

Because the Nebraska rule on notarized poverty affidavits for appeal purposes has been consistently followed by the Nebraska appellate courts; because there is a good reason for such a requirement, that is, to avoid fraudulent applications to fund appeals by persons who could pay their own way in whole or in part; because the rule is a sensible way of avoiding fraudulent applications to fund appeals; and because the rule is not difficult to satisfy, particularly given the ready availability of notaries in Nebraska's prison, I find no basis for excusing the procedural default. *Compare Lee v. Kemma*, 534 U.S. 362 (2002) (Missouri rules requiring that continuance motions be written and accompanied by an affidavit, and setting forth showing movant must make for continuance grounded on absence of witnesses, did not constitute a state ground adequate to bar federal habeas review of petitioner's claim that he was deprived of due process by denial of continuance, where trial court made no reference to the rules, formally perfect compliance with the rules would not have changed trial court's denial of motion, and purpose of rules was satisfied by petitioner's submissions both immediately before and at trial.).

In summary, Petitioner has shown neither cause nor prejudice to excuse his default. Therefore, Pieper has forfeited Claims Two and Three.

IT IS THEREFORE ORDERED that Pieper's Petition for Writ of Habeas Corpus (filing 1) is denied and this action is dismissed with prejudice. A separate judgment will be entered.

August 31, 2010.                    BY THE COURT:

                                    *Richard G. Kopf*

United States District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.